UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LINDA FEINFELD, individually and on behalf of all persons similarly situated, | : : : : | CIVIL ACTION NO. 3:20-cv-00081 |
| Plaintiff, | : : | |
| v. | : : : | |
| EVENFLO COMPANY, INC., | : : | CLASS ACTION COMPLAINT |
| Defendant. | : | JURY TRIAL DEMANDED |

Plaintiff, by her counsel, on behalf of herself and all others similarly situated, brings this proposed class action based upon personal knowledge as to the facts particular to plaintiff, and as to all other allegations, based upon the investigation of counsel. Counsel's investigation includes, *inter alia*, a review of government publications and notices, scholarly articles, press reports and investigations, records from other proceedings, and other pertinent materials. Plaintiff believes, and therefore, avers that discovery will reveal substantial, additional factual support for the allegations and claims set forth herein.

## GENESIS OF THIS LITIGATION

1.    No parent, grandparent, or caretaker of an infant or young child has a greater, or more pressing concern than ensuring the health and safety of his or her child. This action has its genesis in Defendant's decision to place profits over children's safety concerning a product designed, manufactured, marketed and sold to appeal to parents' concern for safely transporting vulnerable infants and children and protecting them from serious injury, or even death.

2.    The product in question – Evenflo's "Big Kid" car booster seat, which was sold to over 18 million consumers – was manufactured, marketed and sold to parents and other caretakers

with an eye to obtain a competitive advantage over competitor Graco and other car seat manufacturers by striving to persuade parents and caretakers that it was safe to move their children from car seats that provided a greater level of protection by convincing them – despite the small size or young age of their children – that this booster seat was designed, manufactured and tested to ensure their safety in the event of an automobile collision.

3.      One of the most dangerous situations, accounting as much as 25% of all automobile fatalities involving children under 15, is where there is a side-impact collision in which the steel beam in the car's door provides the only resistance to the other vehicle's impact.

4.      Defendant designed, manufactured, marketed and sold the "Big Kid" booster seat knowing that, by design, it provided inadequate protection from a side-impact collision, but hid that crucial flaw from trusting parents by prominently claiming on its website, product packaging and brochures, and on the product itself (*see* paragraph 20, below) that it was tested for side-impact collisions pursuant to standards that were twice as demanding as the government's standard.

5.      The reality was that, as a result of industry opposition or bureaucratic delay, no side impact standards had ever been adopted by the federal government for child car or booster seats, even though their adoption were mandated by statute 20 years ago.  As a result, the "tests" – which Defendant claimed on its website were twice as rigorous as these non-existent standards – were designed by Defendant itself.  And in what may constitute its most egregious action, Defendant gave itself a "passing" grade in meeting this "doubly rigorous" standard for any test in which the test dummies were not completely ejected from the seat or the seat itself ended up in multiple pieces.   Yet as outside experts and Defendant's own employees admitted, these side-impact collisions could cause serious, catastrophic injury, or even death to their vulnerable passengers.

6.      The truth, as borne out by Defendant's secret testing and as confirmed in personal injury litigation brought after very young passengers using the "Big Kid" booster seats were traumatically injured, is that the "Big Kid" booster seats were not safe and placed children at unnecessary risk of severe injury or death.   Moreover, both the tests and the testimony of Defendant's own employees – which until now have been largely concealed from consumers – demonstrates that Defendant was repeatedly warned that the seats were not safe.   Nevertheless, Defendant knowingly but improperly marketed these seats as safe for children who were as young as one-year-old or as small as 30 pounds, when Defendant knew that, in the event of foreseeable side-impact collisions, children would have been better protected if they had remained in child car seats.

7.      Even after its own testing results and secret deposition testimony confirmed to Defendant the existence of these serious dangers associated with the "Big Kid" booster seats, Defendant further aggravated the problem by failing to inform consumers – who had previously purchased these booster seats based upon Defendant's representations that the booster seats were side-impact tested – that they posed a risk of grievous injury or death in side-impact collisions and should not be used.   Defendant's conduct was rendered even more egregious in view of the fact that many consumers filled out warranty cards registering their names and addresses with Defendant, which enabled it to warn past purchasers of the "Big Kid" booster seats as evidence mounted of the dangers associated with these seats.   Indeed, Evenflo included a statement on the booster seats themselves, which stated in pertinent part:

> You must register this restraint to be reached in a recall.   Send your name, address, email address if available, and the restraint's model number and manufacturing date to Evenflo Company, Inc., 1801 Commerce Dr., Piqua, OH 45356 or call 1-800-233-5921 or register online at *www.evenflo.com/registercarseat*.

But Defendant chose to remain silent, favoring profits over child safety.

8.    Plaintiff now seeks to secure compensation, for herself and all members of the proposed classes, for Defendant's false and misleading statements that induced them to purchase these unsafe products.  Plaintiff also seeks to obtain appropriate equitable relief to protect all class members from unknowingly continuing to use these defective products.

## PARTIES AND JURISDICTION

9.    Plaintiff Linda Feinfeld was, at the time of the purchase of the "Big Boy" booster seat, a citizen of the State of California. In June 2014 and November 2015, respectively, two "Big Kid" booster seats were purchased for use in California using community property funds. At the time of the filing of this action, Mrs. Feinfeld is a citizen of the State of Michigan.

10.    Defendant Evenflo Company, Inc. ("Evenflo") is a corporation organized under the laws of Delaware, and maintains its principal place of business in Miamisburg, Ohio in this District. Evenflo is a subsidiary of Goodbaby International Holdings Ltd., which acquired Evenflo in June 2014, and in January 2017 announced the hiring of a new CEO, John Chamberlain, for Evenflo.

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy is in excess of five million dollars ($5,000,000.00), exclusive of interests and costs, and because this is a proposed class action representing over 100 putative class members and minimal diversity exists between Plaintiff and Defendant.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Evenflo is a resident of this District and Defendant engaged in actions within this District that contributed to give rise to this action.

## FACTUAL ALLEGATIONS

13.    Organizations dedicated to childhood health, such as the American Academy of Pediatrics ("AAP"), have stated that parents should follow a recognized series of steps in the selection of the appropriate car seats, based, in part, upon the age and size of children:

      a.  Every child should begin with rear-facing car seat;

      b.  Only after the child reaches the top height or weight limit for a rear-facing car seat, should the child be switched to forward-facing car seat with a harness;

      c.  Only after the child exceeds the top weight or height limitation of a forward-facing car seat (and many seats can accommodate children up to 65 pounds or more), should the child switch to a booster seat.

*See, e.g., Car Seats: Information for Families,* www.HealthyChildren.org (a publication of the AAP).

14.    In fact, since the early 2000s, the AAP has advised that children who weigh 40 pounds or less were best protected in a seat with its own internal harness.  And in 2011, the AAP made a further safety determination that parents should keep their children in rear-facing child safety seats for as long as possible before moving them to forward-facing harnessed seats, and that it was no longer ideal to switch children from forward-facing seats to boosters until they outgrew their harnessed seats, explaining ***"[i]t is important to note that every transition is associated with some decrease in protection; therefore, parents should be encouraged to delay these transitions for as long as possible."***  On the same day, the National Highway Traffic Safety Administration ("NHTSA") released new guidelines that echoed the AAP's position.  The Centers for Disease Control and Prevention was even more explicit, advising that "[a]fter outgrowing the rear-facing

car seat, use a forward-facing car seat until at least age 5" and only switch to a booster seat "[a]fter outgrowing the forward-facing car seat."

15.     The public interest organization *ProPublica* issued a report on February 6, 2020 entitled "Evenflo, Maker of the 'Big Kid' Booster Seat, Put Profits Over Child Safety" ("*ProPublica* report"), https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety, which is incorporated herein by reference as if reproduced in this Complaint.

16.     The *ProPublica* report noted that "When Evenflo launched the Big Kid in the early 2000s …. Evenflo told parents the Big Kid was safe for babies as young as 1 as long as they weighed 30 pounds or more.  There was no minimum height."  The *ProPublica* report added:

> Evenflo's engineers would later concede that 1-year olds don't belong in Big Kids.  Joshua Donay, an Evenflo project engineer on the Big Kid, said in a 2016 deposition in a case in Duval County Circuit Court in Florida that he would "not put a 1-year-old in any belt-positioning booster, Big Kid, Graco, you name it."  "I would keep them in an infant seat," added Donay, who left Evenflo in 2004.  Dahle, the top Evenflo booster seat engineer, acknowledged in a deposition in a different case that not only should a 1-year-old never use the Big Kid, a 2-year-old shouldn't either.

> The engineers were reflecting the scientific consensus that booster seats don't adequately protect toddlers.

17.     Evenflo finally increased the minimum age for the "Big Kid" booster seats to 3 years old and added a minimum height of 38 inches, but still falling short of the AAP's position that children should stay in a car seat, not a booster seat, until at least 4 years old, and preferably until the child physically outgrows the car seat.

18.     The *ProPublica* report noted that as early as February 2012, Eric Dahle, a safety engineer at Evenflo, wanted to make a major change in its instructions for the use of booster seats, going so far as to recommend that Evenflo stop selling booster seats for children weighing less than 40 pounds.  Dahle pointed to a 2010 federal report on booster seat effectiveness, which

"looked at a decade of crash data: that 3- and 4-year-old children had a reduced risk of injury in crashes when they were using harnessed seats rather than boosters and that early graduation to boosters may 'present safety risks.'"  Dahle also highlighted that children should remain harnessed until they are 4 or weigh 40 pounds and that harnessed seats may offer more side support and "better containment" for smaller children in crashes.  His recommendation was repeatedly vetoed by a marketing executive, who wrote "Why are we even talking about this?" and stated, "I have looked at 40 lbs for the US numerous times and will not approve this."  An excerpt of the email was included in the *ProPublica* report, as follows:



> **FROM:** Featherstone, McKay
> **SUBJECT:** RE: amp fixtures
> **Date:** Wednesday, July 25, 2012 9:33 AM
>
> Gregg, why are we even talking about this? It has always been this way in Canada so I don't understand why it is now a big problem that requires a $30k investment or us to change product. I have looked at 40 lbs for the US numerous times and will not approve this.

The latter statement was particularly noteworthy as Canadian regulators had already established in 1987 a minimum weight of 40 pounds for booster seats, including Evenflo's, sold in Canada.

19.     Defendant eventually raised the minimum age limit for the "Big Kid" booster seat to 4 years old, but still claimed that it was safe for children weighing as little as 30 pounds. Moreover, Defendant continued to sell old models of the "Big Kid" booster seats with manuals dated 2008 that told parents the seat was safe for 3-year olds.  As a result, parents continued to buy, and use, "Bid Kid" booster seats for 3-year olds, with grievous results.  And Defendant never attempted to notify parents who had previously purchased a "Big Kid" booster seat of revised age or weight standards, even though they had the resources to do so by utilizing the information

obtained when parents filled out warranty cards to register their purchases, as well as by placing notices on their website and/or going back to the company's initial sales records.

20.    Not only did Evenflo ignore the warnings of its own safety engineer when it refused to limit sales for children under 40 pounds, it knowingly made material misstatements on its website and product packaging that its "Big Kid" booster seats were "side impact tested" and that those tests were rigorous, simulating realistic side-impact collisions.  The booster seats included the following tags:





21.     However, Evenflo omitted the crucial fact that, under any objective measure, the "Big Kid" booster seat failed side-impact tests, which indicated that its use could cause children to suffer catastrophic trauma to the head, neck and spinal cord, resulting in serious injuries or death in side-impact collisions.  Graphic depictions of Evenflo's side-impact tests with dummies are included in the *ProPublica* report, which is incorporated by reference in this Complaint.

22.     The *ProPublica* report was based, in part, on the fact that:

> ProPublica obtained multiple years of Evenflo's side-impact test videos, thousands of pages of sworn depositions of company employees and marketing materials that laid out the business objectives for the Big Kid that, until now, had mostly been shielded by secrecy orders in court cases around the country.  These records provide a rare window into one company's marketing and safety decisions.

23.     The *ProPublica* report disclosed that not only did the Defendant's own tests demonstrate that the "Big Kid" booster seats were woefully deficient in protecting vulnerable children in side-impact collisions, but that testimony in personal injury litigation brought against Evenflo demonstrated the real-life traumatic consequences of Defendant's actions.

24.     Rather than focus on genuine safety concerns, reflecting a strategy designed to compete with Graco rather than ensure genuine safety, Defendant concentrated its efforts on cosmetic changes in the "Big Kid" booster seats to create the *appearance* that it was safer.  Thus, in 2008, Defendant added "side wings" to the "Big Kid," stating that the consumer benefits of the new side wings included "increased *perceived* side protection."  In fact, in marketing materials sent to Walmart, Target and Babies R Us, Defendant emphasized in large bold letters that the top feature of the new "Big Kid" was that it was "Side Impact Tested."

25.     However, Defendant's own testing showed that the new "Big Kid" booster seat with side wings performed no better than the old version of that booster seat, as graphically demonstrated by films of product testing showing of the "Big Kid" booster without side wings as well as the one with side wings.  Both showed that in a side-impact collision, either version of the

"Big Kid" booster demonstrated the vulnerability of the head, neck and spine to serious injuries. *See ProPublica* report. Notwithstanding these tests, Defendant concluded that the "Big Kid" boosters passed the side-impact test. In fact, Jeremy Belzyt, a senior test technician whose job involved crash testing boosters and who reviewed various test films showing severe impact on test dummies, told *ProPublica* that in 13 years at Evenflo, he never performed a side-impact test on a booster seat that was deemed a failure. An excerpt from testimony and exhibits, as included in the *ProPublica* reports reads as follows:

> **Rowe: I'm going to hand you — or I'm going to show you what has been marked Plaintiff's Exhibit 104A.**



> **Rowe: Would you have marked dummy retention, yes?**
> **Belzyt: Yes.**

Later, Rowe handed Belzyt a photo of another Evenflo test using a dummy modeled after a 6-year-old.

> **Rowe: Here's Plaintiff's Exhibit 122A.**



**Rowe: Is that a dummy retention, yes?**
**Belzyt: Yes.**

Rowe later handed him a photo of another Evenflo test.



**Rowe: All right. And then Plaintiff's Exhibit 137A, is that a dummy retention, yes?**
**Belzyt: Yes.**
**Rowe: And Plaintiff's Exhibit 138A, what would you answer for dummy retention?**



**Belzyt: Yes.**

26.    Following the belated disclosure of Defendant's egregious conduct in the *ProPublica* report, *ProPublica* issued another article on February 12, 2020 disclosing that the Subcommittee on Economic and Consumer Policy of the House Committee on Oversight and Government Reform ("the House Oversight Subcommittee") is launching an investigation into Evenflo's "product marketing and testing practices."  *ProPublica*, "House Subcommittee Opens Investigation of Evenflo, Maker of 'Big Kid' Booster Seats" ("*ProPublica* follow-up report").  The February 12, 2020 letter from the House Oversight Subcommittee to Evenflo noted in the *ProPublica* follow-up report states in pertinent part:

> ProPublica recently reported that Evenflo's "Big Kid" seats are not safe for children under 40 pounds. Videos of Evenflo's side-impact tests for the "Big Kid" seat show child-sized test dummies bending violently at the hip, torsos, and neck, as well as test dummy heads being thrown to the side. This video evidence appears to represent high risk of serious injuries to the head, neck, and spine.

> Evenflo has marketed the "Big Kid" seat as safe and "Side Impact Tested." That safety representation appears to be inconsistent with the video evidence of side impact testing. In fact, your company's internal tests appear to show that side impacts could put children sitting in the "Big Kid" seat in grave danger.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action on behalf of herself and as a class action, in accordance with Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclass of all persons who purchased the "Big Kid" booster seat from 2008 to the present, for:

> a.  The California subclass, consisting of all persons who resided in the State of California at the time they purchased the booster seat; and
>
> b.  The Multistate class, consisting of all persons residing in states other than California, as enumerated in Count Three, at the time they purchased their booster seat.

28.     Excluded from the Class are Defendant, its corporate parent, any entity in which Defendant has a controlling interest, as well as its directors, officers, legal representatives, successors and assigns.

29.     Members of the class are so numerous and geographically dispersed hat joinder of all members is impracticable. During the Class Period, millions of Big Kid models were sold to millions of individual customers. Class members are readily identifiable from information and records in the possession of Evenflo and third-party merchants like Amazon, Target, Walmart, Kmart, Costco, and Babies R Us.

30.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all Class members have been damaged by the same wrongful conduct as a result of Evenflo's failure to disclose the risks associated with using Big Kid booster seat models, as well as its false and misleading claims that these models were "side-impact tested."  Plaintiff and Class members were misled into purchasing these seats – which they otherwise would not have purchased.

31.     Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.

32.     Plaintiff's counsel are experienced in the prosecution of class-action litigation, including class-action litigation involving defective products.

33.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Evenflo has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate.  Such generally applicable conduct is inherent in Evenflo's wrongful actions.

34.     Questions of law and fact common to the Class include, but are not limited to:

A.     Whether the Big Kid booster seat models sold to class members by Evenflo are unsafe in side-impact crashes;

B.     Whether Evenflo knew, or had reason to know, that its Big Kid booster seat models were unsafe in side-impact crashes;

C.     Whether Evenflo acted to conceal evidence from consumers, including its proprietary tests, data, and opinions of its safety engineer, among others, that the Big Kid booster seat models are unsafe in side-impact crashes;

D.     Whether Evenflo affirmatively misrepresented the safety of its Big Kid booster seat models as "side-impact tested";

E.     Whether Evenflo's conduct was knowing and willful;

F.     Whether Evenflo's failure to disclose the safety risks posed by use of its Big Kid booster seat in its product packaging and labeling (or elsewhere) was unfair, deceptive, fraudulent, or unconscionable;

G.     Whether Evenflo is liable to Plaintiff and Class members for damages under state consumer protection statutes;

H.     Whether an injunction should be issues requiring Evenflo to: (i) recall all Big Kid model booster seats still in use; (ii) allowing booster seat owners to return their seats to Evenflo for a full refund; (iii) cease selling Big Kid

14

model booster seats; and/or (iv) add labeling to all future Big Kid model booster seats warning consumers of the dangers associated with their use;

I.    Whether Plaintiff and Class members are entitled to attorneys' fees, prejudgment interest, and costs, an if so, in what amount.

35.    Plaintiff and Class members have all suffered harm and damages as a result of Evenflo's unlawful and wrongful act. A class actions is superior to other available methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism – including providing injured persons or entities a method for obtaining redress on claims that could no practicably be pursued individually – substantially outweigh potential difficulties in management of this class action. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy at law.

36.    The class treatment of common questions of law and fact also is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficient of adjudication. Additionally, Evenflo has acted and failed to act on grounds generally applicable to Plaintiff and the Class and that require court imposition of uniform relief to ensure compatible standards of conduct toward the Class, thereby making appropriate equitable relief to the Class as a whole within the meaning of Rules 23(b)(1) and (b)(2).

37.    Plaintiff knows of no special difficulty to be encountered in the maintenance of this action would preclude its maintenance as a class action.

38.    In the alternative, in the event that the Court does not grant class certification pursuant to Rules 23(a) and (b)(3) for a nationwide class, pursuant to Count Two, or a Multistate class, pursuant to Count Three, Plaintiff seeks certification pursuant to Rule 23(c)(4) with respect to particular liability issues, consisting of sub-paragraphs 34A-F, above.  Even though various state laws may set the legal standards against which Defendant's conduct is to be judged, these issues will utilize the same operative evidence to establish liability.  Certification on the particular liability issues satisfies Rule 23(c)(4)'s ascertainability and cohesiveness elements, *see, e.g., In re Suboxone*, MDL No. 2445, 2019 U.S. Dist. LEXIS 166524, *114-131 (E.D. Pa. Sept., 27, 2019), and should be granted in the alternative.

## TOLLING OF THE STATUTE OF LIMITATIONS

39.    Evenflo's knowing and active concealment and denial of the facts alleged herein act to toll any applicable statute(s) of limitations. Plaintiff and other Class members could not have reasonably discovered the truth regarding Evenflo's misrepresentations regarding the "Big Kid" booster seats until shortly before commencing this class-action litigation.

40.    Evenflo has had, and continues to have, a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the "Big Kid" booster seats, including the facts that occupants of a "Big Kid" booster seat are at risk of serious, catastrophic injury, or even death in the event of a side-impact collision. "Big Kid" booster seats pose safety concerns, and have a diminished resale value. As a result of Evenflo's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## COUNT ONE - VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750-85)

41.     The averments of paragraphs 1-37 are incorporated as if fully set forth herein.  This Count is asserted on behalf Plaintiff and the subclass consisting of consumers who were residents of California at the time they purchased "Big Kid" booster seat from 2008 to the present.

42.     This claim is brought by Plaintiff against Evenflo on behalf of consumers who were residents of California at the time they purchased the "Big Kid" booster seats that are the subject of this action.

43.     The California Consumer Legal Remedies Act prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer. . . ." Cal. Civ. Code § 1770. Such unfair and deceptive acts include, *inter alia*, "[r]epresenting that good or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ."

44.     Evenflo is a "person" under California Civil Code § 1761(c).

45.     Plaintiff is a "consumer," as defined by California Civil Code § 1761(d), who purchased as community property, one or more "Big Kid" booster seats.

46.     The Defendant participated in unfair or deceptive acts or practices that violated the Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq*., as described above and below and is directly liable for such violations.

47.     By failing to adequate disclose and actively concealing the fact that the "Big Kid" booster seats expose the children buckled in them to the risk of serious, catastrophic injury in the event of a side-impact collision, Evenflo engaged in deceptive business practices prohibited by the CLRA, CAL. CIV. CODE § 1750, *et seq*., including (1) representing that the "Big Kid"

booster seats have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the "Big Kid" booster seats are of a particular standard, quality, and grade when they are not, (3) advertising the "Big Kid" booster seats with the intent not to sell them as advertised, and (4) representing that the subject of a transaction involving the "Big Kid" booster seats has been supplied in accordance with a previous representation when it has not.

48.    The Defendant made numerous material statements about the testing for side-impact collisions undertaken by Defendant that were either false or misleading. Each of these statements contributed to the deceptive context of the Defendant's unlawful advertising and representations as a whole.

49.    Defendant knew that the "Big Kid" booster seat subjected its users, children, to the risk of serious, catastrophic injury, or even death in the vent of a side-impact collision. Defendant nevertheless represented that it had undertaken "doubly rigorous" side-impact testing of the "Big Kid" booster seat, even while failing to warn consumers and Plaintiff about such inherent danger despite having a duty to do so.

50.    Defendant owed Plaintiff and the Class Members a duty to disclose the risk of serious, catastrophic injury to vulnerable passengers in the event of a side-impact collision, because Defendant:

a.    Possessed exclusive knowledge of the defects rendering the "Big Kid" booster seats inherently more dangerous than was represented to consumers;

b.    Intentionally concealed the hazardous situation with the "Big Kid" booster seats through their deceptive marketing campaign and any related program that it designed to hide the life-threatening problems from Plaintiff and Class Members; and/or

c.    Made incomplete representations about the safety of the "Big Kid" booster seats while purposefully withholding material facts from Plaintiff and the Class Members that contradicted these representations.

51.    Whether or not the occupant of a "Big Kid" booster seat is exposed to the risk of a serious, catastrophic injury or even death in the event of a side-impact collision is a fact that a reasonable consumer would consider important in selecting a booster seat to purchase. When Plaintiff and Class Members bought "Big Kid" booster seat for personal, family, or household purposes, they reasonably expected the "Big Kid" booster seat would provide substantial protection, as Evenflo indicated that its "doubly rigorous" tests supported, in the event of a side-impact collision.

52.    Defendant's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff, about the true safety of the "Big Kid" booster seats.

53.    As a result of the violations of the CLRA detailed above, Defendant caused actual damage to Plaintiff and Class Members and, if not stopped, will continue to harm Plaintiff and Class Members. Plaintiff currently owns, or within the class period owned, a "Big Kid" booster seat that presents inherent risk to occupants in the event of a side-impact collision.

54.    Plaintiff and Class Members risk irreparable injury as a result of

55.    Defendant's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiff and Class Members, as well as to the general public.

56.    Plaintiff, via counsel, has provided Defendant with notice at its principal place of business in Miamisburg, Ohio, as of February 27, 2020, in compliance with California Civil Code § 1782 and satisfying California Civil Code § 1782(a). Plaintiff currently seeks injunctive

relief. After the 30-day notice period expires, Plaintiff will amend this complaint in order to demand and recover monetary damages under the CLRA.

57.    Evenflo's fraudulent and deceptive practices proximately caused damages to Plaintiff and the Class.

58.    Plaintiff seeks equitable relief and an order enjoining Defendant's unfair or deceptive acts or practices under California Civil Code § 1780(a), including enjoining Evenflo from the acts and/or practices alleged herein and requiring Evenflo to either (a) recall all "Big Kid" booster seats and cease selling and marketing "Big Kid" booster seats, and/or providing consumers with adequate and accurate disclosure of the inherent risks to occupants of "Big Kid" booster seats in the event of a side-impact collision.

## COUNT TWO – FALSE ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500, *et seq.*

59.    The averments of paragraphs 1-37 are incorporated as if fully set forth herein.

60.    This claim is brought by Plaintiff against Evenflo on behalf of consumers who were residents of California at the time they purchased the "Big Kid" booster seats that are the subject of this action.

61.    California Bus. & Prof. Code §§ 17500, *et seq.*, states that:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . .

62.     Defendant's statements, set forth above, including those made on its product packaging and labelling and on its website, constituted advertising for the purpose of this claim.

63.     Defendant knew or should have known that its statements that its "Big Kid" booster seats were "side impact tested" and that those tests were rigorous, simulating realistic side-impact collisions were false or misleading when made.

64.     As a direct result of Defendant's conduct, Plaintiff and the California subclass have suffered damages.

## COUNT THREE – VIOLATION OF OTHER STATES' CONSUMER PROTECTION STATUTES

65.     The averments of paragraphs 1-37 are incorporated as if fully set forth herein.  This Count is asserted on behalf the nationwide class consisting of purchasers of the "Big Kid" booster seat in other enumerated States from 2008 to the present.

66.     Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the design, manufacture, marketing and sale of its "Big Kid" booster seats.

67.     If Defendant had not engaged in deceptive acts or practices described herein, Plaintiff and the nationwide class members would not have purchased Defendant's "Big Kid" booster seats.

68.     Evenflo's deceptive, unconscionable or fraudulent representations and material omissions to consumers and the public, including Plaintiff, constituted unfair and deceptive acts and practices in violation of the state consumer protection statues listed below:

    a.     Alaska Stat. § 45.50.471, *et seq*.;

    b.     Ariz. Rev. Stat. § 44-1522, *et seq*.;

    c.     Ark. Code. § 4-88-101, *et seq*.;

    d.     Colo. Rev. Stat. § 6-1-105, *et seq*.;

e.     Conn. Gen. Stat. § 42-110a, *et seq.*;

f.     6 Del. Code §§ 2511, *et seq.* and 2531, *et seq.*;

g.     D.C. Code § 28-3901, *et seq.*;

h.     Fla. Stat. § 501.201, *et seq.*;

i.     Haw. Rev. Stat. § 480.1, *et seq.*;

j.     Idaho Code § 48-601, *et seq.*;

k.     815 ILCS §505/1, *et seq.*, and 511/15;

l.     Kan. Stat. § 50-623, *et seq.*;

m.     Ky. Rev. Stat. § 367.170, *et seq.*;

n.     La. Rev. Stat. § 51:1401, *et seq.*;

o.     Md. Com. Law Code § 13-301, *et seq.*;

p.     Mich. Comp. Laws Ann. § 445.90 1, *et seq.*;

q.     Minn. Stat. §§ 325D.01, *et seq.*, 325F.67, and 325F.68 *et seq.*;

r.     Vernon's Ann. Missouri Stat. § 407.010, *et seq.*;

s.     MT Code § 30-14-101, *et seq.*;

t.     Neb. Rev. Stat. § 59-1601, *et seq.*;

u.     Nev. Rev. Stat. Ann. § 598.0903, *et seq.*;

v.     N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.     56 N.J Stat. § 8-1, *et seq.*;

x.     N.M. Stat. § 57-12-1, *et seq.*;

y.     N.Y. Gen. Bus. Law §§ 349 *et seq.*, and 350-a, *et seq.*;

z.     N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     N.D. Cent. Code §§ 51-12-01, *et seq.*, and 51-15-01, *et seq.*;

bb.    Ohio Rev. Code § 1345.01, *et seq.*;

cc.    15 Okla. Stat. § 751, *et seq.*;

dd.    Or. Rev. Stat. § 646.605, *et seq.*;

ee.    73 Pa. Stat. § 201-1, *et seq.*;

ff.    R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

gg.    S.C. Code Laws § 39-5-10, *et seq.*;

hh.    S.D. Codified Laws § 37-24-1, *et seq.*;

ii.    Tenn. Code Ann. § 47-18-101, *et seq.*;

jj.    Utah Code. Ann. § 13-11-1, *et seq.*;

kk.    9 Vt. § 2451, *et seq.*;

ll.    Va. Code § 59.1-196, *et seq.*;

mm.    Wash. Rev. Code § 19.86.010, *et seq.*; and

nn.    Wis. Stat. § 100.20, *et seq.*

69.    Plaintiff and members of the Class relied upon Evenflo's misrepresentations and/or omissions in buying their Big Kid model booster seats.

70.    Plaintiff will provide any required notice to appropriate entities regarding Evenflo's unfair and deceptive trade practices.

71.    As a direct and proximate result of Evenflo's wrongful conduct, Plaintiff and Class members have been damaged by their purchase of Big Kid model booster seats.

72.    As a direct and proximate result of Evenflo's wrongful conduct, Plaintiff and the Class are entitled to compensatory damages, treble damages, attorneys' fees and cost of this suit.

**REQUEST FOR RELIEF**

73.    Plaintiff, on behalf of herself and the Class, respectfully requests that judgment be entered in favor of Plaintiff and the Class and against Defendant providing the following relief, as appropriate under the laws governing each respective count:

a.   Certifying this as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), appointing Plaintiff as a class representative, and approving her selection of lead counsel for the Class;

b.   Declaring that Defendant's failure to disclose the dangers associated with the "Big Kid" booster seats constituted an unfair, deceptive, fraudulent, wrongful and unlawful practice;

c.   Ordering Defendant to promptly provide full and effective notice in plain English of the continuing dangers associated with the use of the "Big Kid" booster seats;

d.   Awarding restitution for all "Big Kid" booster seats purchased by Plaintiff and the Class;

e.   Ordering disgorgement of the ill-gotten gains obtained as a result of Defendant's wrongful conduct;

f.   Awarding the full measure of damages on each applicable count, including actual, statutory, multiple, exemplary or punitive damages, as permitted;

g.   Ordering Defendant to provide appropriate notice and affording all Class members the opportunity to return or replace their "Big Kid" booster seats, in exchange for a full refund of all purchase costs, including applicable taxes and shipping charges;

h.   Issuing a permanent injunction requiring Defendant to (i) recall all "Big Kid" booster seats still in use for children less than 4 years old or weighing less than 40

pounds; (ii) cease selling all "Big Kid" booster seats; and (iii) providing prominent, adequate and clear notice in plain English of all "Big Kid" booster seats and all packaging and manuals or inserts warning of the dangers associated with its use and the importance of not moving children from car seats to booster seats until absolutely necessary;

i.  Awarding costs, reasonable counsel and expert fees;

j.  Awarding pre- and post-judgment interest at the maximum rate permitted by law; and

k.  Providing such additional or different relief as the interests of law or equity may require.

### DEMAND FOR JURY TRIAL

74.  Plaintiff demands a trial by jury of all issues so triable.

Dated:  March 3, 2020

Respectfully submitted:

*s/ James B. Helmer, Jr.*
James B. Helmer, Jr.
B. Nathaniel Garrett
**Helmer, Martins, Rice & Popham Co., L.P.A.**
600 Vine Street, Suite 2704
Cincinnati, OH 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
jhelmer@fcalawfirm.com
ngarrett@fcalawfirm.com

and

**Barrack, Rodos & Bacine**
Mark R. Rosen (*pro hac vice* to be filed)
Jeffrey W. Golan
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-0600

Facsimile: (215) 963-0838
mrosen@barrack.com
jgolan@barrack.com

Stephen R. Basser (*pro hac vice* to be filed)
One America Plaza
600 W. Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com

      and

**Sarraf Gentile LLP**
Joseph Gentile (*pro hac vice* to be filed)
Ronen Sarraf (*pro hac vice* to be filed)
10 Bond Street
Great Neck, NY 11021
Telephone: (516) 699-8890
Facsimile: (516) 699-8968
joseph@sarrafgentile.com
ronen@sarrafgentile.com

*Attorneys for Plaintiff*